Eastern District of Kentucky
FILED
MAR 2 7 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-217-GWU

GLADYS COLLETT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Collett

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Collett

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Collett

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Gladys Collett, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of a seizure disorder, obesity, headaches, borderline intellectual functioning, and an adjustment disorder. (Tr. 23). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determine that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 24-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs assuming that he had no exertional limitations but did have the following non-exertional impairments. (Tr. 443). He: (1) could never climb ladders or ropes; (2) should avoid all exposure to hazards such as unprotected heights and dangerous machinery, and

7

Collett

could not operate any moving equipment or commercial vehicles; (3) had an adjustment disorder and borderline intellectual functioning but had the mental capacity to learn, remember, and carry out simple instructions, adequately relate to co-workers and supervisors in a work environment with limited social interaction, and could tolerate changes in pressures of a routine work environment in which he would have limited contact with the general public. (Tr. 443-4). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 445).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability beginning February 16, 2003, after her injury in a motor vehicle accident. (Tr. 66-7). Her problems included severe headaches, seizures, back and neck pain, and high blood pressure. (Tr. 83). At the administrative hearing, she also ascribed having anxiety attacks which kept her in her home, depression, and nervousness. (Tr. 425-6, 429, 433). Her physicians had prescribed Dilantin and Tegretol for seizures, but she admitted she was not always taking them as prescribed because she ran out or extended the time between doses to stretch her supply. (Tr. 423-4). She was receiving treatment at Kentucky River Community Care (KRCC) which helped her anxiety attacks. (Tr. 425-6). She did not know the cause of her seizures or her migraine headaches, as a CT scan of the

8

brain had been normal. (Tr. 435-6). She felt that if she did not have seizures, she still would not be able to work because she did not like to be around crowds of people. (Tr. 437).

The plaintiff's treating family physician, Dr. Roy Varghese, submitted treatment notes, and added a residual functional capacity assessment dated November 30, 2004, stating that the plaintiff was suffering from grand mal seizures at an average rate of three per month, which lasted for three to four minutes and resulted in confusion, exhaustion, irritability, severe headache, muscle strain, and paranoia lasting for three to four days. (Tr. 376-7). Her medications were Dilantin and Tegretol and Dr. Varghese noted that she was "responding" and compliant with taking the medication. (Tr. 377). The medications had side effects of lethargy and lack of alertness. (Tr. 378). In his opinion, she could not drive, work at heights, use machinery, or operate a motor vehicle. (Id.). However, she would be able to take a bus alone. (Id.). Other problems associated with the condition were depression, irritability, memory problems, and behavior extremes. (Tr. 378). In his opinion, she would be incapable of even low stress jobs and would be absent from work for more than four days per month. (Tr. 379).

The ALJ rejected Dr. Varghese's opinion, except as it related to working around dangerous equipment or unprotected heights. Based on the medical records submitted, the ALJ found that the plaintiff's seizure condition was controlled by the

use of medication, and incidents in which she reported seizures were associated with subtherapeutic levels of medication. (Tr. 23). The plaintiff alleges on appeal that the opinion of Dr. Varghese, as a treating source, should be given controlling weight.

While the opinion of a treating source is normally entitled to great deference, this is not the case where objective medical records exist to contradict it. See Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner points to records from Mary Breckenridge Healthcare, Dr. Varghese's employer, which contain blood work done after several incidents of seizures in which the level of Dilantin was not therapeutic or the plaintiff admitted that she had not been taking her medication. (Tr. 243, 287-8, 316, 318, 320, 325-6, 321, 331, 333, 341-2, 350). At certain other points, the Commissioner states, Dr. Varghese indicates that her seizures were controlled. (Tr. 223, 238, 241, 347, 349).

However, the most recent seizures, in late October and November, 2004, are not documented in the office notes in the transcript, which do not extend beyond October 12, 2004. (Tr. 305). After a seizure on August 31, 2004, at which time the Dilantin level was substantially subtherapeutic (Tr. 321, 325), the level was almost therapeutic by September 17 (Tr. 316) and had reached a therapeutic level by October 1 (Tr. 310). During the office visits in this period including September and through October 12, the patient was seen for headaches and back pain, but no

10

Collett

mention was made of seizure activity. (Tr. 305-17). Dr. Varghese gave specific dates for each of the three alleged subsequent seizures (October 26, November 11, and November 21), however. (Tr. 376). He also indicated that they had occurred <u>despite</u> the patient's being compliant with medications, which is consistent with the most recent blood work. (Tr. 377). The ALJ chose to disregard this, and emphasize Dr. Varghese's statement that the plaintiff was "responding" to prescriptions. (Id.).

Additionally, in view of the plaintiff's testimony that she did not have the money to buy her medication and had to rely on samples given by her physician,[1] the ALJ's duty was to determine if there was an affordable treatment available to her that would prevent the condition from being a "severe" impairment. McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990). No inquiry on this point having been made, a remand will be required.

The decision will be remanded for further consideration.

This the  27  day of March, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

---

[1] At one point, Dr. Varghese even referred to her medications as being "costly." (Tr. 355).

11